# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DREMA ODELL | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CIT BANK, Formerly One West Bank, | : | |
| N.A. and SAFEGUARD PROPERTIES | : | NO. 17-1850 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                           August 24, 2017

      This dispute arises out of a state-court foreclosure action brought by CIT Bank, which holds a mortgage on real property in Newtown Square, Pennsylvania. Plaintiff Drema Odell resides in the property, which was part of the estate of the late Edward W. Weingartner, Jr. Although she is the executrix of the estate, Odell brings this action in her own capacity, not as the personal representative of the estate. She sues CIT Bank, N.A., which holds the mortgage on the property, and Safeguard Properties, the company CIT Bank hired to secure the property during the foreclosure process.

      Odell claims the defendants broke into her home, stole her personal belongings, and engaged in deceptive business practices, causing her emotional distress. In her *pro se* complaint, she brings claims for conversion, trespass, negligence, negligent infliction of emotional distress, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL),[1] punitive damages, and quiet title.

      The defendants have filed motions to dismiss. CIT Bank argues that Odell has not stated a cognizable claim against it. Safeguard Properties moves to dismiss the emotional distress, UTPCPL, and punitive damages claims against it.

---

[1] 73 Pa. Cons. Stat. § 201-1 *et seq.*

Because Odell does not state claims for negligent infliction of emotional distress, violations of the UTPCPL, or punitive damages against Safeguard Properties, we shall grant its motion to dismiss those claims only. Against CIT Bank, Odell has not stated claims for conversion, negligent infliction of emotional distress, UTPCPL, punitive damages, and quiet title. She does state claims for trespass and negligence. Therefore, we shall grant CIT Bank's motion in part and deny it in part.

## Background[2]

On November 2, 2007, Edward W. Weingartner, Jr., granted a reverse mortgage for property located at 1801 Whispering Brooke Drive, Newtown Square, Pennsylvania to Financial Freedom Senior Funding Corporation.[3] On May 5, 2009, the mortgage was assigned to Mortgage Electronic Registration Systems, Inc. (MERS).[4] In February 2012, two months after Weingartner's death, MERS assigned the mortgage to One West Bank, now CIT Bank, N.A.[5]

The same day Weingartner took out the mortgage, he deeded the property to Florida Real Estate, LLC.[6] According to CIT Bank, Odell is the sole and managing

---

[2] As we must in considering a Rule 12(b)(6) motion, we accept the facts recited in Odell's complaint as true and view them in the light most favorable to her. We also take judicial notice of public records, including judicial proceedings, not for the truth of their content, but for their existence. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 256 n.5 (3d Cir. 2006) (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)). Thus, unless noted otherwise, the facts recited in this memorandum opinion are as they appear in her amended complaint.

[3] Compl. (Doc. No. 1) ¶ 11; *see id.*, Ex. D (Doc. No. 1-1) at ECF 1–17.

[4] Compl. ¶ 13; s*ee id.*, Ex. F (Doc. No. 1-2) at ECF 2–4. The assignment was made by a subsidiary, "Financial Freedom Acquisition LLC."

[5] Compl. ¶¶ 14, 16; s*ee id.*, Ex. G (Doc. No. 1-2) at ECF 5–8.

[6] CIT Bank Mot. to Dismiss, Ex. 2 (Doc. No. 4-5)

member of Florida Real Estate.[7]

Odell was named "executrix and sole beneficiary and heir of Mr. Weingartner's estate."[8] According to CIT Bank, she has been residing at the property rent-free "since at least the time of Weingartner's death."[9]

On March 26, 2012, One West Bank filed a foreclosure action against Florida Real Estate in the Chester County Court of Common Pleas.[10] On May 19, 2013, it amended the complaint to add Odell as a defendant in her capacity as executrix of Weingartner's estate.[11] Odell claims that One West Bank agreed to a short sale in July 2014 and February 2015.[12] Apparently, there was no sale.

On March 25, 2015, Odell discovered that the front door lock of the property had been changed.[13] The back door window was broken and the master bedroom had been "trashed."[14] The water had stopped running.[15] Many of her belongings, including jewelry and designer handbags, were missing.[16] Odell called two locksmiths and the

---

[7] CIT Bank Mot. to Dismiss at 3 n.5.

[8] Compl. ¶ 15.

[9] CIT Bank Mot. to Dismiss at 3 n.5.

[10] CIT Bank Mot. to Dismiss, Ex. 3 (Doc. No. 4-5) at ECF 9. Odell alleges that One West Bank filed a foreclosure action against both Odell as executrix of Weingartner's estate and Florida Real Estate in August 2013. Compl. ¶ 20. CIT Bank attached to its motion to dismiss the docket sheet for the foreclosure action, which shows that it filed the foreclosure action on May 26, 2012 and amended its complaint to add Odell as a defendant in her capacity as the executrix of Weingartner's estate on May 19, 2013.

[11] CIT Bank Mot. to Dismiss, Ex. 3 at ECF 10.

[12] Compl. ¶¶ 21, 25; *id.*, Ex. H (Doc. No. 1-2) at ECF 9–19.

[13] Compl. ¶ 26.

[14] *Id.* ¶ 27.

[15] *Id.*

[16] *Id.*

police.[17]

That same day, Odell's attorney sent a letter to One West Bank inquiring if it was aware of the incident.[18] One West Bank did not respond.[19] One week later, Odell found a snake in her closet.[20]

On April 27, 2015, Odell walked downstairs after returning home from work and found a contractor in the house.[21] The contractor informed her that "they were there on behalf of the bank that owned the house to finish winterizing the house."[22] Odell asked him to step outside the house, where she discovered a second contractor.[23] The contractors showed her a work order and later emailed it to her.[24] Defendant Safeguard Properties was hired by "NSTAR" to winterize the property and change the locks.[25]

On February 5, 2016, Safeguard placed a white sticker on the front door of the property. The sticker provided a phone number to call if the property was not vacant.[26] When Odell called Safeguard, a customer service agent informed her that "the Bank named Nationstar" had hired Safeguard on behalf of One West Bank.[27] She now

---

[17] *Id.*; *see also id.*, Ex. I (Doc. No. 1-2) at ECF 20–21.

[18] Compl. ¶ 28.

[19] *Id.*

[20] *Id.* ¶ 27.

[21] *Id.* ¶ 29.

[22] *Id.* ¶ 30.

[23] *Id.*

[24] *Id.*

[25] *Id.* ¶¶ 30, 32; *see id.*, Ex. I at ECF 22–29.

[26] Compl. ¶ 35.

[27] *Id.*

alleges that Safeguard contractors, agents of One West Bank, were responsible for the earlier entry.

Meanwhile, in April 2015, One West Bank had filed a quiet title action against Odell as executrix of Weingartner's estate and against Florida Real Estate in the Chester County Court of Common Pleas.[28] On July 7, 2015, the court consolidated the quiet title and the foreclosure actions.[29]

On the morning of February 10, 2016, on her way to the Chester County courthouse to attend a pretrial conference, Odell's security company called her, reporting that "the security had been breached."[30] Odell claims that "[s]omeone with the bank tried to break in at that exact moment."[31] There is no allegation that there had been an unauthorized entry into the property or who actually breached security.

On March 2, 2016, Odell filed an action in this district court against One West Bank, N.A. and Safeguard Properties, as well as four other defendants: Financial Freedom Senior Funding Corporation, Nationstar Mortgage, MERS, and John Doe.[32] On June 30, 2016, the complaint was dismissed for lack of diversity jurisdiction.[33]

Subsequent to filing the March 2, 2016 complaint, Odell filed two bankruptcy actions. The first case, a Chapter 13 bankruptcy filed by Odell as the executrix of

---

[28] *Id.* ¶ 33.

[29] CIT Bank Mot. to Dismiss, Ex. 3 at ECF 12–13.

[30] Compl. ¶¶ 36–37.

[31] *Id.*

[32] Compl. (Doc. No. 1), Odell v. One West Bank, NA, Civ. No. 16-984 (E.D. Pa. filed Mar. 2, 2016).

[33] *See* Mem. Op. (Doc. No. 33), Odell v. One West Bank, NA, Civ. No. 16-984 (E.D. Pa. filed June 30, 2016).

Weingartner's estate on March 10, 2016, was dismissed May 24, 2016.[34] The second case, a Chapter 11 bankruptcy filed by Florida Real Estate on April 27, 2016, was dismissed April 12, 2017.[35]

Twelve days later, on April 24, 2017, Odell filed this action against CIT Bank and Safeguard Properties. In addition to alleging the same causes of action as her March 2, 2016 complaint, she asserts a quiet title action against CIT Bank.

On June 26, 2017, the Chester County Court of Common Pleas entered judgment in favor of CIT Bank on its quiet title claims against Florida Real Estate and Odell in her capacity as executrix of Weingartner's estate.[36] The parties entered into a stipulation in which they agreed to withdraw all claims and defenses regarding the legal description of the property or the validity of the mortgage.[37] CIT Bank also agreed to pay Odell $5,000.[38] On July 20, 2017, pursuant to their agreement, the parties filed a praecipe for entry of judgment and assessment of damages against Odell as executrix of Weingartner's estate and Florida Real Estate in the amount of $950,739.45 in exchange for CIT Bank forbearing and refraining from any legal action against the property for sixty days and not causing any sheriff's sale until February 14, 2018.[39]

---

[34] Docket, *In re* Odell, No. 16-11643 (Bankr. E.D. Pa.).

[35] Docket, *In re* Fla. Real Estate, LLC, No. 16-12958 (Bankr. E.D. Pa.).

[36] Order, CIT Bank NA v. Fla. Real Estate LLC, No. 2012-03038-RC (Pa. Ct. C.P. Chester Cty. filed June 26, 2017).

[37] Order Ex. A, CIT Bank NA v. Fla. Real Estate LLC, No. 2012-03038-RC (Pa. Ct. C.P. Chester Cty. filed June 26, 2017).

[38] *Id.*

[39] Stip. for Entry of J. in Rem in Favor of Pl. & Against Defs., CIT Bank NA v. Florida Real Estate LLC, No. 2012-03038-RC (Pa. Ct. C.P. Chester Cty. filed July 20, 2017).

## Standard of Review

A Rule 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint. In order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In considering a motion to dismiss under Rule 12(b)(6), we first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions. Then, we determine whether the facts alleged, if proven, show that the plaintiff has a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

All well-pleaded allegations of the complaint must be accepted as true and interpreted in the light most favorable to the plaintiff and all inferences must be drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (internal quotation marks omitted). To survive a motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact)." *Victaulic Co. v. Tieman*, 499 F. 3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

A conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8).

In other words, the complaint must contain facts which, if proven later, support a conclusion that a cause of action can be established.

Additionally, the *pro se* plaintiff's pleadings are considered deferentially, affording her the benefit of the doubt where one exists. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (citing *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)). With these standards in mind, we shall accept as true the facts as they appear in Odell's complaint and draw all possible inferences from these facts in her favor.

## Analysis

### *Statute of Limitations*

Actions for conversion, trespass, negligence resulting in injury to property, and negligent infliction of emotional distress must be filed within two years of the accrual of the cause of action. 42 Pa. Cons. Stat. § 5524.[40] Odell filed this action on April 24, 2017. Thus, Odell's tort claims that accrued before April 24, 2015 are barred by the statute of limitations.

Odell bases her claims for trespass and negligent injury to property on three separate occurrences. First, on March 25, 2015, Odell returned home to find her locks changed, her back window broken, her water turned off, and her closet open with items

---

[40] The statute provides, in relevant part:

> The following actions and proceedings must be commenced within two years:
> . . .
> (3) An action for taking, detaining or injuring property, including actions for specific recovery thereof.
> (4) An action for waste or trespass of real property.
> . . .
> (7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud. . . .

42 Pa. Cons. Stat. § 5524.

8

missing, including jewelry and designer handbags.[41]  One week later, she discovered a snake in her bedroom, which she attributed to the incident the previous week.[42]  Second, on April 27, 2015, Odell discovered two men inside the house who "said they were there on behalf of the bank that owned the house to finish winterizing the house" and provided her with a Safeguard work order.[43]  Third, on February 10, 2016, "the bank tried to break in" when she was en route to court in her Chester County case.[44]

The April 27, 2015 and February 10, 2016 acts fall within the limitations period.  The March 25, 2015 events do not.  Therefore, unless an exception applies, her claims for conversion and negligent infliction of emotional distress arising from the March 25, 2015 occurrences are barred by the statute of limitations.

### Pennsylvania Discovery Rule

The statute of limitations does not start running until the plaintiff knows or could have known that she had been injured and the defendant caused the injury.  *Morgan v. Petroleum Prods. Equip. Co.*, 92 A.3d 823, 828 (Pa. Super. 2014).  The plaintiff has an obligation to exercise reasonable diligence to inform herself of the facts and circumstances giving rise to her cause of action and to initiate suit within the limitations period.  *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000) (citing *Hayward v. Med. Ctr. of Beaver Cty.*, 608 A.2d 1040, 1042 (Pa. 1992)).

The application of the discovery rule is generally a question of fact.  *Id.* (quoting *White v. Owens-Corning Fiberglas Corp.*, 668 A.2d 136, 144 (Pa. Super. 1995)).

---

[41] Compl. ¶¶ 26–27.

[42] *Id.* ¶ 27.

[43] *Id.* ¶ 30; *id.*, Ex. I (Doc. No. 1-2) at ECF 22–29.

[44] Compl. ¶ 36.

However, where the facts are clear and reasonable minds would not differ, the commencement of the limitations period may be decided as a matter of law. *Id.* (citing *Hayward*, 608 A.2d at 1043).

Odell knew that she had been injured and suspected CIT Bank on March 25, 2015. That same day, her lawyer sent a letter to CIT Bank "inquiring if they were aware of the break in." If she did not know of CIT Bank's involvement at that time, she had an obligation to exercise due diligence to discover who was responsible. About a month later, she learned the identity of the Safeguard Properties subcontractor. In February 2016, she knew that Safeguard was there at the request of One West Bank, CIT Bank's predecessor. Therefore, Odell cannot rely on the discovery rule to toll the limitations period for the March 25, 2015 trespass.

## Continuing Violations

Odell cannot show that the April 27, 2015 and February 10, 2016 events are continuing violations of the March 25, 2015 events. The continuing violations doctrine provides that "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)). The doctrine applies when: (1) the violations are of the same type and are connected; (2) the acts are recurring; and (3) the initial act did not have the degree of permanence that would have alerted the plaintiff that she had a duty to assert her rights then. *Id.* (citing *West v. Phila. Elec. Co.*, 45 F.3d 744, 755 n.9 (3d Cir. 1995)).

The incidents of April 27, 2015 and February 10, 2016 are not practices

continuing from March 25, 2015. Each involves a discrete act. Hence, the continuing violations doctrine does not apply.

In sum, there is no exception to toll the statute of limitations for Odell's conversion and negligent infliction of emotional distress claims. Accordingly, we consider only the claims arising after April 24, 2015.

*Conversion*

Odell alleges the unlawful deprivation of her property in only one instance: the March 25, 2015 break-in. She alleges "jewelry bags had been emptied" and designer "handbags were missing."[45] The alleged conversion took place more than two years before Odell started this action. Therefore, because it is barred by the statute of limitations, Count I will be dismissed as to CIT Bank.

*Trespass*

Odell alleges two unauthorized entrances into the property within the limitations period. The first was on April 27, 2015, when two men from Safeguard were inside the house.[46] She contends that the defendants had "a duty to ensure that Safeguard and its subcontractors only entered vacant property or otherwise appropriate properties for maintenance, ensure that the subcontractors were not thieves to steal property and to otherwise refrain from disturbing the peace, peaceful use and enjoyment of the owners and occupants of the property."[47] She also alleged facts explaining how she learned that CIT Bank engaged Safeguard.[48]

---

[45] *Id.* ¶ 27.

[46] Compl. ¶ 30.

[47] *Id.* ¶ 32.

[48] *Id.* ¶ 35.

11

Odell has stated a claim for trespass against CIT Bank based on the April 27, 2015 allegations. The complaint alleges that Odell resides at the property, persons acting on behalf of CIT Bank entered the property without her permission, and the entry was not privileged.

Under the doctrine of respondeat superior, "[a]n employer is vicariously liable for the wrongful acts of an employee if that act was committed during the course of and within the scope of employment." *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 39 (Pa. Super. 2000). Viewing the allegations in the light most favorable to Odell, she may be able to show that the bank directed the actions of the persons who entered the property without authorization. Therefore, she has stated a claim for trespass against CIT Bank based on the April 27, 2015 incident. She may proceed on Count II of her complaint.

The second incident occurred on February 10, 2016, when "the security company called and said that the security had been breached."[49] She concludes that "[s]omeone with the bank tried to break in at that exact time."[50] She alleges no other facts supporting her claim that anyone entered the house. One could not reasonably find or infer that the defendants had any connection to the security alarm activating, nor that there was anyone in the property. She has not stated a claim against either of the defendants arising from the incident of February 10, 2016.

*Negligence*

To establish a *prima facie* case of negligence under Pennsylvania law, a plaintiff

---

[49] *Id.* ¶ 36.

[50] *Id.*

must show: (1) a defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3) the breach caused the injury at issue; and (4) the plaintiff incurred actual loss or damages. *Krentz v. Consol. Rail Corp.*, 910 A.2d 20, 27 (Pa. 2006).

Odell claims that the defendants had a duty "to properly vet its winterizing company prior to hiring it to winterize Plaintiff's house and to determine the record owner of the premises. . . . not to enter upon her property without permission . . . to ascertain [sic] that it was in fact a vacant house prior to ordering the contractors to do the work and then to leave some indication as to who was in the house so that Plaintiff did not have worry that it was a family member or drug people."[51]

Viewing the facts in the light most favorable to Odell, she has stated a claim for negligence. She has alleged that CIT Bank breached its duty owed her as the occupant and owner of the property when persons under the defendants' control and direction unlawfully entered her home. With respect to damages, Odell alleges that the contractors "disturb[ed] the peace" and prevented the "peaceful use and enjoyment of the owners and occupants of the property."[52] Therefore, because Odell alleges the elements of a negligence claim against CIT Bank, she may proceed on Count III.

*Negligent Infliction of Emotional Distress*

Odell does not dispute that she did not allege a physical injury as a result of having discovered her home had been ransacked. Instead, she argues that she need not do so.

In her complaint, she describes her emotional harm as follows:

---

[51] *Id.* ¶ 50–51.

[52] *Id.* ¶ 32.

13

> It is an understatement to say that the shock of seeing the entire contents of one's home dumped on the floor is more than the emotional harm a reasonable person should be expected to bear. To see her house ransacked and valuable heirlooms taken, doors and windows broken. And in the next few days to have no running water in the house in zero weather. And, a week later to wake up to go to work and find a snake which was left by the robbers in the Plaintiff's bedroom closet under the clothes they had thrown on the floor.[53]

In short, she alleges the initial shock upon seeing the condition of her home on March 25, 2015 and a snake in her closet a week later. She does not allege any physical harm. Thus, because she has not stated a requisite element of a cause of action for negligent infliction of emotional distress, we shall dismiss Count IV of her complaint against both defendants. *Toney v. Chester Cty. Hosp.*, 961 A.2d 192, 200 (Pa. Super. 2008), *aff'd*, *Toney v. Chester Cty. Hosp.*, 36 A.3d 83, 94–95 (Pa. 2011)).

*Unfair Trade Practices and Consumer Protection Law*

In her response to CIT Bank's motion to dismiss, Odell does not address the UTPCPL argument made by CIT Bank.[54] She apparently concedes that she has not made out a cause of action under the UTPCPL. Nevertheless, had Odell opposed the motion, her claim would not survive.

The UTPCPL provides a private cause of action for any "person who purchases or leases goods or services" who sustains the loss of money or property as the result of unfair and deceptive practices. 73 Pa. Cons. Stat. § 201-9.2(a). It aims to protect consumers of goods and services.

Odell was not a consumer of either of the defendants' goods or services. There

---

[53] *Id.* ¶ 58.

[54] In response to Safeguard's motion, with respect to her UTPCPL claim, Odell states only that "the defendants and their agents were aware of their conduct in previous lawsuits." Mem. of Law in Supp. of Pl.'s Answer to Safeguard Props. LLC's Mot. to Dismiss (Doc. No. 8) at 10. This argument cannot save her UTPCPL claims.

was no consumer transaction.  Therefore, Odell has not alleged the essential elements of a claim under the UTPCPL.

Even if there had been the requisite relationship alleged, her UTPCPL count would still fail.  She recites the elements of a cause of action under the UTPCPL and makes conclusory statements.  She does not allege facts that make out unfair or deceptive practices or that she suffered harm caused as a result of such conduct.  Therefore, we shall dismiss her claim under the UTPCPL in Count V.

*Punitive Damages*

With respect to punitive damages, Safeguard argues that "[t]his matter is an ordinary negligence case and does not warrant punitive damages."[55]  CIT Bank argues that Odell has "failed to plead any facts supporting such a claim."[56]

Punitive damages are damages awarded in addition to compensatory damages to "punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct."  *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005).  They "are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct."  *Id.*

There is no independent cause of action for punitive damages.  *DiGregorio v. Keystone Health Plan E.*, 840 A.2d 361, 370 (Pa. Super. 2003) ("It is settled law that one cannot recover punitive damages independently from an underlying cause of action.").  "If no cause of action exists, then no independent action exists for a claim of punitive damage since punitive damages are only an element of damages."  *Id.* (internal

---

[55] Safeguard Mot. to Dismiss ¶ 39.

[56] CIT Bank Mot. to Dismiss at 23.

quotation marks omitted) (quoting *Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800, 802 (Pa. 1989)).

Odell has claimed punitive damages as a separate count in her complaint. We shall dismiss Count VI, the punitive damages count. However, we shall allow her to seek punitive damages provided she can prove a basis for such damages.

*Quiet Title*

CIT Bank argues that Odell does not have standing to bring a quiet title action in her individual capacity because she does not have a legal interest in the property. In the alternative, CIT Bank argues that we should abstain from deciding the claim pursuant to *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942), because the quiet title and foreclosure case it brought in the Chester County Court of Common Pleas was ongoing.

The state court action has been adjudicated. On June 26, 2017, the Chester County Court of Common Pleas entered judgment in favor of CIT Bank on its quiet title claim. Later, on July 20, 2017, the parties filed a praecipe for entry of judgment in favor of CIT Bank on its foreclosure claims against Florida Real Estate and Odell in her capacity as executrix of Weingartner's estate.[57] In this case, Odell brings her quiet title claim in her individual capacity, not as the executrix of Weingartner's estate.

In her complaint, Odell alleges that she resides at 1801 Whispering Brooke Drive.[58] She alleges that she owns the parcel at issue and that the ongoing foreclosure proceeding "impairs the right and title of Plaintiff to real property outside the 'footprint'

---

[57] Docket, CIT Bank NA v. Florida Real Estate LLC, No. 2012-03038-RC (Pa. C.P. Ct. Chester Cty. filed June 26, 2017).

[58] Compl. ¶ 1.

16

described by the metes and bounds of the outside edge of the residential structure at 1801 Whispering Brooke Drive."[59] She claims "all of the real property from outside the edges of the residential structure and extending to the perimeter described in the metes and bounds deep description."[60] Because she does not seek to eject another occupant from the property, she brings her action to quiet title "to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land." Pa. R. Civ. P. 1061(b)(2).

A motion to dismiss for lack of standing is brought under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. A motion to dismiss for lack of standing can be "factual" or "facial." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). Because CIT Bank argues that Odell does not have a legal interest in the property, it makes a factual attack on her standing. In considering a factual attack, we "may weigh and 'consider evidence outside the pleadings.'" *Id.* (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

The jurisdiction of federal courts is limited to actual cases or controversies. Article III of the Constitution requires that a plaintiff suffer an injury-in-fact, that is, "the invasion of a concrete and particularized legally protected interest and resulting injury in fact that is actual or imminent, not conjectural or hypothetical." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *see also In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). "An injury is 'concrete' if it is real, or distinct and palpable,

---

[59] *Id.* ¶ 8.

[60] *Id.* ¶ 84.

17

as opposed to merely abstract, and is sufficiently particularized if 'it affect[s] the plaintiff in a personal and individual way.'" *Blunt*, 767 F.3d at 278 (quoting *N.J. Physicians, Inc. v. President of the U.S.*, 653 F.3d 234, 238 (3d Cir. 2011)).

CIT Bank argues that Odell does not have a concrete and particularized legally protected interest in the property. It challenges Odell's claim of ownership of the property, specifically the allegation in her complaint that, on November 2, 2007, "Weingartner . . . deeded the Unit 1801 to himself and a limited liability company , [sic] Florida Real Estate LLC."[61] Odell counters that she was the "executrix and sole beneficiary and heir" of Weingartner's estate,[62] suggesting that she inherited Weingartner's individual interest in 1801 Whispering Brooke Drive.

CIT Bank contends that Weingartner deeded 1801 Whispering Brooke Drive only to Florida Real Estate, not to himself. It attached to its motion to dismiss the November 2, 2007 deed, which shows Edward W. Weingartner as grantor and Florida Real Estate as grantee.[63] So, CIT Bank argues that because Weingartner did not deed 1801 Whispering Brooke Drive to himself, Odell has no interest in the property as his executrix, sole beneficiary, and heir. In her response, Odell does not address CIT Bank's arguments regarding Weingartner's deed.

A plaintiff "does not have an interest to support an action to quiet title" when "it has no possessory rights" in the property at issue. *Nat'l Christian Conference Ctr. v. Schuylkill Twp.*, 597 A.2d 248, 250 (Pa. Commw. 1991). Relying on *National Christian Conference Center*, the Third Circuit concluded that a county recorder of deeds could

---

[61] Compl. ¶ 10.

[62] *Id.* ¶ 15.

[63] CIT Bank Mot. to Dismiss, Ex. 2 (Doc. No. 4-5).

not "maintain a quiet title claim, as she does not claim an interest in land, only an interest in recording fees." *Montgomery Cty., Pa. v. MERSCORP Inc.*, 795 F.3d 372, 374 n.2 (3d Cir. 2015) (citing *Nat'l Christian Conference Ctr.*, 597 A.2d at 250).

Odell brings her action to quiet title on the metes and bounds of the property at 1801 Whispering Brooke Drive. Yet, she does not dispute that Weingartner deeded the property to Florida Real Estate. Accordingly, once he deeded the property to Florida Real Estate, Weingartner no longer had an ownership interest in the property for Odell to inherit.

Even though she currently resides at 1801 Whispering Brooke Drive, she has no possessory rights in the land in her individual capacity. She cannot allege any facts that show a possessory right. She cannot maintain an interest in the metes and bounds of property in which she has no legal or possessory rights. Therefore, because Odell lacks standing in her individual capacity to quiet title of the metes and bounds of 1801 Whispering Brooke Drive, we shall dismiss Count VII of her complaint.

## Conclusion

We shall grant Safeguard's motion to dismiss the negligent infliction of emotional distress, UTPCPL, and punitive damages claims against it. We shall grant CIT Bank's motion to dismiss the conversion, negligent infliction of emotional distress, UTPCPL, punitive damages, and quiet title claims. We shall deny the motion to dismiss the trespass and negligence claims.